UNITED STATES of America, Plaintiff,

v.

Angelo SARUBBI, Defendant.

Cr. No. 75–70.

United States District Court,
D. New Jersey.

July 15, 1976.

---

Frank J. Kiernan, Sp. Atty., Washington, D. C., Jonathan L. Goldstein, U. S. Atty., Newark, N. J., for the United States.

Michael Querques, Orange, N. J. (Stuart M. Kurtzer, Orange, N. J., on the brief), for defendant.

OPINION

BIUNNO, District Judge.

Sarubbi appeared before the court for the purpose of withdrawing his not guilty plea

---

and pleading guilty to a charge of using interstate commerce facilities to distribute the proceeds of an unlawful activity (bribery), in violation of 18 U.S.C. § 1952, and aiding and abetting that violation, 18 U.S.C. § 2.

The proceedings began with an examination under oath, including explanations to Sarubbi, all as called for by F.R.Crim.P. 11(c) and (d). From this it appeared that while holding public office in North Bergen, Sarubbi terminated an existing engineering contract for sewers and arranged to award it to one Bernard Kenny and his company. This was done after Kenny had told Sarubbi that the latter would receive campaign contributions in cash. Under local law such contracts need not be advertised and awarded to the lowest bidder. Some of the contract payments went to a New York City firm, cash was generated from the checks, and then paid to Sarubbi by Kenny. Sarubbi admitted to having received $15,000 or $16,000 in this way.

Inquiry was also made, as called for by F.R.Crim.P. 11(e)(2) whether there had been any negotiations as to sentencing, and the court read from F.R.Crim.P. 11(e)(1), listing the 3 kinds of agreement authorized: type A, dismissal of other charges (not involved here); type B, agreeing to recommend, or agreeing not to oppose the defendant's request for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; type C, agreeing that a specific sentence is the appropriate disposition of the case.

The attorney for the government then disclosed that the agreement made was that if defendant pleaded guilty, it would, under B, not oppose any recommendation that defendant's attorney might make as to sentence, with the understanding that the request would not be binding on the court.

Defendant's attorney said that this was not the entire agreement, and that the other part was what his request of the court would be. Further colloquy brought out that he intended to request a non-custodial sentence, and that he had so informed the attorney for the government. It also developed that it is the policy of the U. S. Attorney in this district not to engage in sentence negotiations, or arrive at sentence agreements, beyond agreeing not to oppose whatever request for sentence the defendant wishes to make. This is one of the two kinds of type B agreements the rule authorizes. The policy does not allow making the other kind of type B agreement, namely, an agreement that the government will recommend a particular sentence, with the understanding that the recommendation shall not be binding upon the court.

Thus, the government's undertaking is satisfied, under this kind of type B agreement, when (1) the defendant makes his request to the court and (2) the government does not oppose it, as discussed in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). A very recent case involving the other kind of type B agreement is *U. S. v. Futeral*, 530 F.2d 971 (CA–4, Decided November 19, 1975.) There, the government agreed to recommend a sentence of no more than one year. It did so recommend, but the judge imposed a sentence of three years. He then sought to withdraw his plea, and that was denied. On appeal, the ruling was affirmed on the ground that since defendant was fully aware of the risk he ran when he tendered his plea, there was no showing of a want of voluntariness in its submission.

*Futeral* was decided on the basis of the law before the present rule was adopted, and suggests that under the new rule, there is a right to withdraw a plea when there is a type C agreement and the terms are rejected, while under a type B agreement, where the defendant is clearly told that the recommendation (or request) is not binding upon the court, non-acceptance of the recommendation (or request) may not be a rejection of the bargain entitling defendant to withdrawal of the plea under Rule 11(e)(4). It did not have the question before it, and expressed no opinion on it.

In this case, the question is squarely presented. The record here is clear beyond question that Sarubbi was told repeatedly

that the only agreement the government made was that it would not oppose his request for a non-custodial sentence, with the understanding that the request was not binding on the court. He was told that the personal view of the special attorney who appeared, that a non-custodial sentence would be appropriate, was valueless since he had no authority to make an agreement with that term. He was told that any promise or prediction or expectation of what the sentence might be was only speculation, somebody's guess; that it is not binding, and that the court alone decides what sentence to impose. He was told what the outer boundaries and collateral consequences might be, including a sentence of up to 5 years in jail, a $10,000 fine or both.

He said he understood all of this, and still wished to plead guilty. The court is satisfied and finds that he did fully understand what was explained and that the plea was voluntary in all respects.

After approving the agreement and accepting the plea of guilty, the court began the process of imposing sentence. The court was aware of counsel's request for a non-custodial sentence, and counsel had nothing to say beyond what was in the presentence report. The court then addressed Sarubbi, pointing out that he had an independent right to speak up before the court decided what sentence should be, reminding him of the statutory maximums.

Counsel then interrupted to present argument that if sentence were other than as requested, there would be a right to withdraw the plea under Rule 11(e)(4) with which view the court disagreed. Counsel then moved for leave to withdraw the plea, and disposition was reserved to allow time for research and briefing, which has now been done.

The newness of the rule means that there are no reported cases on the point, other than the comment (not a ruling) in *Futeral*. Yet, the court is not without guides.

*Campobello* endorsed "plea bargaining" and, properly administered, encouraged it. It should be observed that in this district, it is the policy of the U. S. Attorney's Office to engage in plea negotiations, as distinguished from sentence negotiations. It will agree to accept a plea to one or two counts and to dismiss other counts, or other indictments, or not to bring other charges. It will agree to accept a plea to an information charging a lesser offense, and to dismiss the indictment. All of that is properly termed "plea negotiating". (type A agreements)

As to sentence negotiations, it will only agree (a) to stand mute at sentencing, regardless of what sentence request may be made, except to speak up to correct a statement of fact; (b) to inform the probation office of any assistance provided to the government by the defendant as evidence of repentance, rehabilitation, and the like, for evaluation and inclusion in the presentence report. It will not recommend a particular sentence (one of the two kinds of type B agreement), and it will not agree that a specific sentence is an appropriate disposition of the case (type C agreements).

As the legislative history discloses, the use of plea negotiations and sentence negotiations is not compelled by Rule 11(e). What it does is to regulate the negotiations and agreements "if, and to the extent that, the *court* permits such negotiations and agreements" (House Report No. 94–247, p. 6, 1975, U.S.Code Cong. & Admin.News 1975, pp. 674, 678). (Emphasis added). This indicates that the policy is for the court to set, and it may be that the present policy of the U. S. Attorney's Office, which is a continuation of the policy in existence before the new Rule 11 took effect in December, 1975, is without authority. This court has not restricted the scope of use of the tools provided by the new Rule 11, to achieve the objectives described in *Campobello.*

Even under the old rules, some members of the bar of this court, being fully aware of their client's background, the nature and severity of the offense, and the published criteria for sentencing, have unilaterally tendered conditional pleas of guilty, i. e., on condition that if a custodial sentence is to

be imposed for more than X years, the defendant will be allowed to withdraw his plea and stand trial. In such cases, the court decides whether or not to accept the plea on that condition. When that has been done, this member of the court has refused to accept the conditional plea unless the condition is at least flexible enough to permit sentencing under 18 U.S.C. § 3651 (split sentence). Sometimes it will not accept the plea unless it is to two counts, with a condition that sentence on the second count may be consecutive, with execution suspended and the defendant placed on probation to follow any term sentence on the first count.

These various forms of conditions provide essential tools for sentencing, and the court knows of no good reason why their use should be limited to unilateral tenders without any participation by the attorneys for the government. Approval or disapproval of any terms for plea or sentence are in the court's hands alone, in any event, and the court ought to have the benefit of any assistance it can be given.

In this case, Sarubbi did not offer a conditional plea, as he might have done unilaterally. He offered a plea as part of an agreement with the government, one term of which was that the request made by defendant was not binding upon the court. The government did what it was supposed to do: it did not oppose the request.

The fact that the request is not binding on the court in no way implies that it has no effect on sentence. The lack of opposition may persuade the court to impose a lesser custodial sentence than it might have otherwise. And, since sentencing was interrupted here, the court does not know now what sentence will be imposed. Counsel had nothing to say, presumably because he assumed that approval of the agreement was an approval of the request, which it was not. The defendant has not yet addressed the court. For all that is known now, it may be that the sentence will be non-custodial. The court's practice is to have at least two, and sometimes three tentative sentences in mind at sentence time, but it never arrives at a decision on sentence until it has heard counsel and the defendant in support of the request.

This practice is especially vital in cases disposed of by plea rather than trial, because sentence day is the only occasion the court has to study and evaluate the individual himself.

Every conscious effort is made to impose the same sentence, whether the defendant pleads guilty or is found guilty by a jury. No premium is placed on standing trial. Of course, a defendant who stands trial when the evidence against him is compelling, with no meritorious defense available, takes the risk that the sentencing judge will learn a great deal more about him, his participation in the offense and the extent of the crime, than he would ever learn from a presentence report and a sentence day. This is a risk of trial which a defendant presumably takes into account in seeking the advice of counsel. It is a risk that only the defendant and his counsel can evaluate.

The language and meaning of Rule 11(e)(1) and (4) are entirely clear. For a type A or type C agreement, if the proposed dismissals or the proposed sentence is not acceptable to the court, defendant must be allowed to withdraw his plea of guilty. For a type B agreement, the recommendation made or the agreement not to oppose are factors to take into account on sentence, but if sentence is other than requested, there is no right to withdraw the plea.

This is for the obvious reason that in a type B agreement it is part of the agreement itself that the parties understand that the court is not bound by the recommendation or request. Non-acceptance of the *request* is not a rejection of the *agreement*, and so is not within Rule 11(e)(1).

No agreement, whether of type A, B or C, is binding on the court. It may approve or reject any of these agreements. This being so, the Congress would have had no reason to use the critical language for the type B agreement unless it meant that the *agreement* could be both approved and satisfied even though the *recommendation* or *request* failed to persuade the court to im-

pose the very sentence recommended or requested.

The motion for leave to withdraw the plea is denied. Sarubbi is to appear for sentencing on July 26, 1976, at 10 A.M.

SO ORDERED.