UNITED STATES of America,
Plaintiff-Appellee,

v.

Rudolph Valentino HENDERSON,
Defendant-Appellant.

No. 77–1465.

United States Court of Appeals,
Ninth Circuit.

Dec. 8, 1977.

---

Richard S. Mannis (no appearance), Portland, Or., for defendant-appellant.

Ken A. Bauman, Asst. U. S. Atty. (appeared), Portland, Or., for plaintiff-appellee.

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and WILLIAMS,* District Judge.

DUNIWAY, Circuit Judge:

Henderson appeals from an order denying his motions for leave to withdraw his guilty plea and for a reduction of his sentence. We affirm.

On April 19, 1976, Henderson pled guilty to a charge of transporting a woman across state lines for immoral purposes, in violation of 18 U.S.C. § 2421. The plea was entered pursuant to an agreement embodied in a written "Petition to Enter Plea of Guilty." In that petition defendant recited that the following promise as to disposition had been made to him by the United States Attorney:

4 YEARS MAXIMUM, CONCURRENT WITH OTHER CHARGE TO WHICH I HAVE MADE GUILTY PLEA. POSSIBLE I WILL RECEIVE LESSER SENTENCE, INCLUDING PROBATION.

Henderson had previously been sentenced to a term of four years after pleading guilty to an unrelated narcotics offense. This is the "other charge" mentioned in the plea agreement. In pertinent part, and in the same section, the petition also provided:

I know that the sentence I will receive is solely a matter within the control of the Judge. I hope to receive leniency, but I am prepared to accept any punishment permitted by law which the Court sees fit to impose. However, I respectfully request the Court to consider, in mitigation of punishment, that I have voluntarily entered a plea of guilty.

The trial judge discussed the terms of the plea agreement with Henderson when the plea was offered on April 5, 1976, and again on April 19, 1976. We set out the colloquies between the judge and Henderson in the margin.[1] As these colloquies show, the

1. On April 5, 1976:
   The Court: What promises have been made

judge made it as clear to Henderson as anyone could that the portion of the agreement relating to the sentence was only a recommendation, and that there was no commitment as to what the sentence would be. The court then accepted Henderson's guilty plea and sentenced him to a term of five years, that term to run consecutive to the four year sentence imposed in the narcotics case.

■ Under these circumstances, we cannot say that Henderson was misled concerning the terms of the plea agreement, or that the prosecution failed to honor its promise. *Santobello v. New York*, 1971, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427; *Conley v. United States*, 9 Cir., 1969, 407 F.2d 45, *cert. denied*, 1969, 396 U.S. 853, 90 S.Ct. 113, 24 L.Ed.2d 104. As we said in *Conley*, "[a] disappointed hope for leniency does not, without more, render a guilty plea invalid." 407 F.2d at 47.

■ Henderson argues that there is more, that the trial court erred when it sentenced him by failing to comply with the terms of F.R.Crim.P. 11(e). Specifically, he says that the trial court rejected the plea agreement but failed to offer him an opportunity to withdraw his plea, as required under Rule 11(e)(4). We hold that the trial court did not reject the plea agreement, but accepted it, and was therefore not obliged to offer Henderson a chance to withdraw his plea.

> to you with reference to your guilty plea in this case?
> Henderson: That they would run concurrently.
> The Court: That is, somebody would make a recommendation that they would run concurrently?
> Henderson: Yes.
>
> . . . . .
>
> The Court: Mr. Henderson, are you under the impression you are entering these pleas because you're going to receive concurrent sentences or that there is going to be a recommendation you receive concurrent sentences?
> Henderson: I am—there's going—I am guilty of the crime. They are going to recommend concurrent sentences to run together.
> The Court: I don't want you to be entering your plea in this case if you are under the definite impression the sentence in this case is going to run concurrent with the other one. You are not entering this on that assumption?
> Henderson: No.
> The Court: There can be a recommendation. And maybe they will run concurrently, but the Court might reject the recommendation. You understand that?
> Henderson: Yes.
> The Court: In which event, it would run consecutively where you would serve the time on one sentence and then you would serve the time on the other sentence. You understand that?
> Henderson: Yes.
> The Court: I don't want you to come back. The thing that bothers me, I want you to understand it now, Mr. Henderson, if you have any questions about it, now is the time we should talk about it.
> Henderson: I understand.
> The Court: So you understand they have promised they are going to make a recom-

> mendation that the time that you serve on this charge would run concurrent with the time you would serve on the drug charge? Is that correct?
> Henderson: Yes.
> The Court: But the Court would not be bound to follow that recommendation. You understand that?
> Henderson: Yes.
> The Court: The Court could or could not. You realize that?
> Henderson: Yes.

On April 19, 1976, the day that the court accepted Henderson's plea, the following exchange took place:

> The Court: At the time that I accepted the plea on both of these charges, I was very specific in asking whether there were any promises made with reference to sentence or whether there was any suggestion made with reference to sentence, and I think the response that I received to both of those questions was that there were no promises and there were no suggestions, other than that he was entering a plea of guilty to an information and the indictment counts—counts in the indictment were going to be dismissed. Did I misunderstand?
> Defense Counsel: No, you did not, Your Honor.
> The Court: Mr. Henderson, did I misunderstand? Did you enter these pleas on either of these counts on the basis of any promise that was made to you as to what the sentence might be?
> Henderson: No, but just that a recommendation would—we might run it concurrent, is all.
> The Court: Well—
> Henderson: That—so, Your Honor said it was left up to the discretion of you.

The pertinent language of Rule 11(e) is as follows:

(e) Plea Agreement Procedure.

(1) In General. The attorney for the government and the attorney for the defendant . . . may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty . . . to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case. The court shall not participate in any such discussions.

(2) Notice of Such Agreement. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court . . . at the time the plea is offered. Thereupon the court may accept or reject the agreement, . . . . .

(3) Acceptance of a Plea Agreement. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) Rejection of a Plea Agreement. If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally . . . that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw his plea, and advise the defendant that if he persists in his guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

In Henderson's case, there was a type (1)(B) agreement. There was no type (1)(C) agreement, because there was no agreement "that a specific sentence is the appropriate disposition of the case." Rather there was a "recommendation . . . with the understanding that such recommendation . . . shall not be binding upon the court . . . ," which is provided for in subparagraph (B). Consequently, when the court proceeded to impose a different sentence from the one recommended, he did not reject the agreement, but acted as its express terms provided. Hence Rule 11(e)(4) does not apply. Nor do we think that Rule 11(e)(3) applies, because, while the court did accept the plea agreement, that agreement did not provide for a disposition, but only for a recommendation of one.

Henderson argues that both paragraph (3) and paragraph (4) apply to all three types of agreement listed in paragraph (1)(A), (B) and (C). The language of paragraphs (3) and (4) does not support the argument. Paragraph (3) does not mention a "recommendation," or a "request," as subparagraph (1)(B) does; it mentions only a "disposition provided for in the agreement," which tracks subparagraph (1)(C). It would have been easy for the draftsman to insert in paragraph (3), before the word "disposition" the words, "recommended or requested," or some similar words referring to subparagraph (1)(B), but they are not there. It would also have been easy to insert in paragraph (4) after the words "plea agreement," the words "or recommended or requested sentence," or some similar words referring to subparagraph (1)(B), but they are not there. Moreover, if we were to read them into paragraphs (3) or (4), we would make subparagraph (1)(B) surplusage, by turning all (1)(B) agreements into (1)(C) agreements, so far as their effect is concerned. This we decline to do. We do not think that the draftsman intended that subparagraph (1)(B) be surplusage. Our views are supported by Judge Biunno in his opinion in *United States v. Sarubbi*, D.N.J., 1976, 416 F.Supp. 633, 636. *See also, United States v. Futeral*, 4 Cir., 1975, 539 F.2d 329, 331, n. 1 (dictum). We do not think that *United*

*States v. Hull*, E.D.Tenn., 1976, 413 F.Supp. 145, is to the contrary, but if it is, we think it wrong.

We offer two tentative suggestions. The first is that the form of Petition to Enter Plea of Guilty used in the District of Oregon should be revised so that it conforms to Rule 11(e)(1). The second is that, at least in cases in which the court intends to impose a sentence that is substantially more onerous than the recommended or requested disposition in a type (1)(B) case, the judge might do well to offer the defendant a chance to withdraw his plea, even though the rule does not require that this be done. The procedure could eliminate possible misunderstanding and bitterness at what the defendant may think unfair, and forestall post sentencing motions such as those now before us. There is always the possibility that the defendant may consider the warnings that the judge is not bound to follow the recommendation or request as ritual incantations, not to be taken seriously. *See United States v. Hammerman*, 4 Cir., 1975, 528 F.2d 326, 331. In this case, however, we cannot see how Henderson could have entertained any such belief after the judge had taken such pains to make the situation clear to him.

Affirmed.