**UNITED STATES of America**

v.

**Robert FISCHETTI, Louis Pascalli, William David, and Frank La Guardia, Defendants.**

**Crim. No. 78–261.**

United States District Court, D. New Jersey.

Sept. 10, 1979.

---

Robert J. Del Tufo, U.S. Atty., by V. Grady O'Malley, Sp. Atty. of the Dept. of Justice, Newark, for the U.S.

Michael A. Querques, Orange, N.J., for defendant Fischetti.

Dennis D. M. McAlevy, Jersey City, N.J., for defendant Pascalli.

Samuel R. De Luca, Jersey City, N.J., for defendant David.

Arthur J. Abrams, Jersey City, N.J., for defendant La Guardia.

## MEMORANDUM

BIUNNO, District Judge.

Despite the elaborate colloquy at the hearing of September 6, 1979, the court was left with the impression that neither the United States nor defense counsel fully understands the legal aspects and implications of the subject discussed. This memorandum is designed to assure that these matters are fully understood.

The applicable history begins with *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), a case arising out of the New York courts.

Santobello had been indicted on two felony counts involving gambling in the first degree, and not guilty pleas were entered. After negotiation, the State agreed to allow Santobello to plead guilty to a lesser-included second degree charge which carried a maximum sentence of one year. "The prosecutor agreed to make no recommendation as to the sentence," 404 U.S. at 258, 92 S.Ct. at 497. Plea was accepted and a sentence date was set.

After motions to withdraw the plea, to renew a withdrawn suppression motion and to inspect Grand Jury minutes were denied, Santobello appeared for sentence. A different prosecutor, unaware of the earlier agreement, recommended the maximum one-year sentence and gave his reasons. The defense objected and sought adjournment to provide proof of the agreement. The court (not the same judge who took the plea) denied the adjournment, stating that it was not at all influenced by the recommendation and proceeded to impose a one-year sentence on the basis of the highly adverse data in the presentence report. The Appellate Division affirmed, and the Court of Appeals denied leave to appeal. The Supreme Court granted certiorari.

After pointing out that there is no absolute right to have a guilty plea accepted, and that the court may reject the plea in the exercise of sound judicial discretion, the court held that it did not matter if the breach of the agreement by the second prosecutor was inadvertent, or if the sentencing judge felt himself uninfluenced by the state's recommendation.

Rather, the court felt that the importance of allowing and encouraging guilty pleas, whether negotiated or not, as an essential tool for judicial administration, required that they be obtained in complete fairness. Otherwise, serious problems of the right to counsel under the Sixth Amendment, and of the right to due process under the Fifth Amendment, would be implicated. To have such problems arise is to frustrate the underlying purpose of allowing and encouraging fair plea agreements. Since a State conviction was involved, the decision necessarily rested on these constitutional grounds, applied to the State through the Fourteenth Amendment.

The judgment was vacated, and the case remanded so that the state court might consider whether the plea agreement should be specifically enforced by resentence before a different judge, or whether defendant should be allowed to withdraw his plea and stand trial on the original indictment.

It should be observed that *Santobello* was decided a year later than *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In that case the court sustained the constitutional validity of a plea of guilty to a reduced charge of second degree murder, despite defendant's protestations of innocence, when the record showed that defendant intelligently concluded that his interests would be advanced by the plea, and that there was strong evidence of actual guilt.

*Alford* did not hold that a defendant has a right to enter a guilty plea to less than that with which he is charged, merely because it was in his interest to reduce the peril of a more severe sentence. It ruled only that when it was clearly in his interest to do so, and when the trial record showed the existence of strong evidence of guilt, there was no constitutional defect in accepting the plea despite defendant's protestation of innocence. Obviously, the trial court could have rejected the plea and put defendant to trial.

It should be noted at this point that at the time of *Santobello*, F.R.Crim.P. 11 (referred to by the *Santobello* court) was silent on the subject of plea agreements. The provisions of the then Rule 11 are now found in Rule 11(a), (b) and part of (d) and (f). All of Rule 11(c), most of Rule 11(d), all of Rule 11(e) and part of Rule 11(f), were added by the 1975 amendments, Pub.L. 94–64, § 3(5) to (10).

The first decision reported after these changes was *U.S. v. Futeral*, 539 F.2d 329 (CA–4, 1975). Futeral was indicted for conspiracy to distribute cocaine and possession with intent to distribute. A plea agreement was made. Its terms called for filing of a superceding information charging unlawful use of a telephone in aid of the distribution of cocaine, 21 U.S.C. § 843(b). It called for him to plead guilty to that information. It called for dismissal of the original indictment. It called for a recommendation by the United States that if an active prison sentence was to be imposed, it be for not more than one year.

Before the plea was tendered, Futeral was informed by his attorney that the prosecutor's recommendation was not binding on the judge, although in 80% to 90% of such cases, the recommendation was accepted. At the plea, the court informed Futeral that the recommendation was not binding, and that he could impose any sentence up to the maximum. Futeral said he understood this. The plea was then accepted with no indication of accepting or rejecting the recommendation.

At the later sentence hearing, despite the recommendation, the court imposed a three year sentence with early parole eligibility under former section 18 U.S.C. § 4208(a)(2) [Now 18 U.S.C. § 4205(b)(2)]. After denial of motions to reduce sentence (F.R.Crim.P. 35) and for leave to withdraw the guilty plea [F.R.Crim.P. 32(d)], appeal was taken.

Speaking for the Court of Appeals for the Fourth Circuit, Chief Judge Haynsworth ruled that the prosecution had adhered to its commitments, and that since it had been made explicit and clear that the court was not bound by the prosecution's recommendation, it could not be said that Futeral's frustration of hopes and expectations amounted to a showing that his plea was involuntary, coerced or otherwise constitutionally deficient.

At the close of the ruling the court took note of the recently enacted amendments to Rule 11. It suggested, without deciding, that if there were a Type C agreement, there would be a right to withdraw the plea, but not if there were a Type B agreement.

The next reported decision on the subject is *U.S. v. Sarubbi*, 416 F.Supp. 633 (D.N.J., 1976). There, at the plea proceeding, the court reviewed the specific types of agreement authorized by Rule 11(e)(1), labelled for convenience as Type A, B and C. The United States disclosed that its agreement was one of the two kinds authorized under B, namely an agreement not to oppose the defendant's request in regard to sentence "with the understanding that such . . request shall not be binding on the court." This was precisely the same term as was presented in *Futeral*. Defendant said there was more to the agreement, namely that he intended to request a non-custodial sentence, and that he had so informed the United States. The court ruled that for either kind of Type B agreement, i. e., whether it be a recommendation for a particular sentence (as in *Futeral*), or an agreement not to oppose defendant's request for a particular sentence (as in *Sarubbi*), it is with the understanding that the recommendation or request shall not be binding on the court. Sarubbi's application to withdraw his plea was denied, because non-acceptance of the *request* was not a rejection of the *agreement*, which the United States had adhered to by not opposing the request, even though the court was not bound by the request. No appeal was taken, and there is not, to this date, any ruling on the point by the Court of Appeals for the Third Circuit.

Next came *U.S. v. Savage*, 561 F.2d 554 (CA–4, 1977), the same court that decided *Futeral*. There, the plea agreement included a Type B provision under which the government recommended a five year sentence concurrent with another twenty-two year sentence. At sentence, the court indicated its unwillingness to follow the government's recommendation, and the defendant asked that he be allowed to withdraw his plea. The request was ignored and a ten-year concurrent sentence was imposed.

On appeal, the court ruled that the judge had not rejected the plea *agreement* and that its non-acceptance of the *recommendation* did not entitle Savage to withdraw his plea under Rule 11(e)(4) because the recommendation was not binding on the court. It referred to the *Sarubbi* case and said:

"We believe this reasoning to be sound and adopt it as the rule of this circuit."

In respect to the request to withdraw the plea before sentence under Rule 32(d), the case was remanded for a trial court determination whether the government would be prejudiced by allowing withdrawal and, if not, indicated that the withdrawal should be allowed.

The next decision in the line is *U.S. v. Henderson*, 565 F.2d 1119 (CA–9, 1977). There, defendant submitted a petition to enter a guilty plea, with a recital that the government had promised a disposition of four years maximum, concurrent with sentence on another charge. When the petition was tendered, a colloquy ensued in which it was made entirely clear that the promise was to make a *recommendation* within Type B but that the court was not bound by it and could impose a consecutive sentence. Henderson said he understood. The judge then imposed a consecutive sentence, and appeal was taken.

The Court of Appeals for the Ninth Circuit analyzed Rule 11(e) and concluded (a) that the agreement made was a Type B agreement and that (b) failure to sentence in accordance with the *recommendation* was

not a rejection of the *agreement*, and the sentence judgment was affirmed. Certiorari was denied, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978).

Finally, there is *U.S. v. White*, 583 F.2d 819 (CA–6, 1978). White was indicted on four charges involving stolen Treasury checks. After pleading not guilty at arraignment, there were negotiations for a plea and an agreement reached. The agreement was that White would plead guilty to all the charges. In exchange, the United States agreed to recommend concurrent three year terms with all but 90 days suspended. This was evidently a probationary "split" sentence as authorized by 18 U.S.C. § 3651.

At the hearing to enter the pleas, the court was informed that they were being tendered through a Rule 11 plea agreement, but the terms were not then disclosed. The judge made it clear that although there was a commitment to recommend a sentence, the recommendation would not be binding on the court and it would itself decide what sentence to impose. White said he understood, and the pleas were entered. His attorney then raised the question whether, if the court did not sentence in accordance with the government's recommendation (not then disclosed) White would be allowed to withdraw his plea. The court replied that he would not. It referred to its traditional practice of accepting such pleas conditionally, so that if on sentence day it decided not to sentence in accordance with the recommendation, defendant would be allowed to withdraw his plea and stand trial, but that in this case it was not doing so but was accepting the plea on an absolute rather than on a conditional basis. The court said it was satisfied that White understood this, and even though it would give great weight and consideration to the government's recommendation, it was accepting the pleas "without any strings attached". White was personally questioned on the point and understood.

At sentence, the government adhered to its commitment and recommended a sentence of 3 year concurrent terms with all but 90 days suspended. The court, however, decided to sentence White to an indeterminate term under the Youth Corrections Act, 18 U.S.C. § 5010(b).

On appeal, after considering the decisions in the Fourth and Ninth Circuit and in this District, the Sixth Circuit disagreed. It first ruled that the agreement (like those in the other cases) was a Type B agreement. It then ruled that even in such cases, where the sentence will not fit the recommendation (or request), the trial court must afford defendant an opportunity to withdraw his plea, not under Rule 32(d) but under Rule 11(d)(4). The sentence judgment was vacated and the case remanded for further proceedings. No petition for certiorari has been filed.

Thus, the reported cases to this date indicate that the Fourth and Ninth Circuit agree with the analysis of this court in *Sarubbi*, and that the Sixth Circuit does not. The Court of Appeals in this Circuit has not addressed the point, and while the other circuits mentioned are in disagreement, and while certiorari was denied in the Ninth Circuit case, the Supreme Court has not ruled on the point.

This background and analysis provide the context for the present case. Here, oral agreements were made by the government with all four defendants. In exchange for a plea of guilty on Count 1, the government agreed (a) to move for dismissal of all remaining counts [1] and (b) to stand mute, i. e., make no recommendation about sentence. Fischetti tendered his plea on this basis,

---

**1.** Ever since the question first arose in *Moore v. U.S.*, 402 F.Supp. 1244 (D.N.J., 1975), this court has followed the invariable course of making explicit that the dismissal of charges under Rule 11(e)(1)(A) is a dismissal on limitation, i. e., the dismissal to remain in effect only so long as the plea, sentence and judgment pronounced remain in full force and effect.

This specification states the existing law and makes explicit that which is implicit but might otherwise not be realized. A statement making this clear is made a part of the experimental written plea agreement developed since *U.S. v. Sarubbi*, 416 F.Supp. 633 (D.N.J., 1976).

attaching to it a condition that if a custodial sentence were imposed, it would not exceed one year. The court allowed the plea to be so entered, making it clear that this request or condition was not binding on the court, and that if it found itself unable to sentence in that framework, Fischetti would be allowed to withdraw his plea.

The United States protested the conditional nature of the plea, but it was entered over its protest. Before the next plea was taken, a recess was called to allow the government and the remaining defendants to assess the matter and confer. On resumption, the government announced that it was withdrawing its agreement with the three other defendants. They then each proceeded to tender guilty pleas to *all* counts charged against them, attaching the same condition. They were informed, as Fischetti had been, that they would be allowed to withdraw their pleas if the court found itself unduly restricted by the condition. A sentence date was set.

On August 20, 1979, after reviewing the case file and the plea transcript, the court concluded that in light of all the circumstances, it could not undertake to prepare for sentence within the framework of the conditions, and so notified all parties in writing. It directed that all parties appear on the sentence day, at which time they would be allowed to withdraw their pleas, re-enter not guilty pleas, and stand trial, and a short date was set for trial. At about the same time, the United States filed a motion to vacate the guilty pleas, contending that the attached condition was not authorized by Rule 11. This motion was rendered moot by the court's own ruling, but it nonetheless is an element to be considered, mainly because the last two paragraphs of the brief seemed to the court to amount to speaking to the matter of sentence contrary to the agreement to stand mute on the subject.

On September 6, 1979, all parties appeared, and the defendants raised a new issue. They claimed that under *Cooper v. U.S.*, 594 F.2d 12 (CA-4, 1979) they were entitled to have enforcement of the negotiated plea agreements with the government. For the reasons to be stated, even assuming that *Cooper* were binding, the position taken cannot be sustained.

*Cooper* was a case in which the terms of a plea agreement were negotiated between the government and the defendant's counsel, who then needed to consult with his client, who was in jail. He consulted the same day and was authorized to accept. After some delay in reaching the AUSA on the phone, counsel was told (before he could report the acceptance) that the offer had been withdrawn at the direction of the superior, the U.S. Attorney. Cooper stood trial, was convicted and sentenced, and appealed. On this point, the Fourth Circuit reversed, holding that the government's conduct was constitutionally unfair, and remanded for further proceedings.

Whether it be good law or not, the *Cooper* decision simply does not apply here because, as made clear on the record of September 6, 1979, the United States remains ready and willing to adhere to the original plea agreement. The problems here do not involve a *Cooper* issue. They are different problems.

█ *First*, on review of the file and plea transcript, it was obvious that the court would face difficulties in arriving at consistent sentences. Fischetti's plea was to one count, while the others pleaded to 3 or 5 counts in which they were charged. Sentencing courts have more flexibility in tailoring sentences to achieve the multiple objects of sentence when there are two or more counts rather than only one, yet this flexibility would be unavailable for Fischetti.

*Second*, it seemed to the court that the government's protests on July 9 might be a breach of its commitment to remain silent in regard to sentence, contrary to the rule of *Santobello*. This is so even though the protest was directed to the condition attached to the pleas, because the condition dealt with sentence. The government conceded on July 9 that if there were no condition, the court would be hypothetically free to impose no jail sentence at all, yet under

the agreement concededly made, the government would be obliged to remain silent on the subject. This element was aggravated by the last two paragraphs of the government's brief on its mooted motion, mentioned above.

█ *Third*, this court cannot be sure that the Third Circuit will uphold the decision in *Sarubbi* and follow the Fourth and Ninth Circuits, or whether it will choose to follow the Sixth Circuit. Prudence dictates that when a plea dispute arises before sentence the wiser course is to allow withdrawal of the plea as recommended by the Fourth Circuit in *Savage*, under Rule 32(d), without reaching the issue whether there is a right to withdraw the plea under a Type B agreement under Rule 11(e)(4). This the court has done.

*Fourth*, the record establishes that the written experimental form of plea agreement distributed to the parties was not followed and used as designed. That form tracks the language of Rule 11(e)(1) in respect to the kinds of agreements authorized, and explains their significance as this court understands them. The oral agreements reached here do not comply with the form, and the United States did not sign it. For these reasons, the whole purpose of the written form is frustrated, and in place of exactness and certainty, the court is confronted with controversy. This being so, it is better that the plea proceedings be vacated and that the matter go to trial.

Yet, both the government and the defendants insist that they have an agreement and wish to have it recognized. While there is no right to have a plea of guilty entered, even absent an agreement, the court will not close the door to such a disposition. However, the parties are put on notice now that the court will not entertain a plea on a Rule 11 agreement unless the written form is used and signed by both sides. Nor will the court entertain any plea, even pleas of guilty or nolo contendere to all the counts, with any condition attached. Had defendants informed the government of their intention to plead on condition, as was done in *Sarubbi*, the present controversy may never have arisen. Just as a matter of professional courtesy, the experienced defense counsel should have done this.

On the date now set for further proceedings, if pleas are to be tendered and considered, what has transpired so far must be fully neutralized and everything must be done over from the beginning. The guilty pleas must be withdrawn and the not guilty pleas reinstated. Each defendant was personally informed on September 6 of his absolute right to do so and each said he understood. Also, the parties are put on notice that no subsequent guilty plea will be entertained unless the risk that a *Santobello* violation may have already occurred, no matter how inadvertent or unintentional, is fully eliminated. There is no point to proceeding with any plea while this risk is open, no matter how remote.

The use of the written forms will be required for the very reasons pointed out by the *Cooper* court, 594 F.2d at 20, where it emphasized the importance of employing routine requirements of signed memoranda as a simple and obvious tool to provide certainty and avoid controversy. Important transactions such as property contracts, deeds, mortgages and wills have long been required to be put in writing. Agreements in respect to pleas affecting a person's constitutional rights and liberty are hardly of lesser importance.[2]

The pleas under discussion here were taken on July 9, 1979. This is before the

---

**2.** On the use of written forms for pleas and plea agreements, see also *State v. Taylor*, 80 N.J. 353 at 363, 403 A.2d 889 (1979), and the text reproduced in 101 NJLJ 286 (Mar. 23, 1978), reflecting the provisions of N.J. Court Rules 3:9-2 and 3:9-3.

Of course, the use of written forms is not intended as a substitute for, but rather as a supplement to the direct questioning of a defendant by the judge in open court. As a supplement to such questioning it serves the function of a check list and aids in assuring that the defendant's plea is voluntary, knowledgeable, intelligent and not the result of coercion or undisclosed promises or understandings.

August 1, 1979 effective date of the recent amendment to Rule 11(e)(2), which now reads as follows:

*Rule 11.  Pleas.*

. . . . .

*(e) Plea agreement procedure.*

. . . . .

*(2) Notice of such agreement.*—If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered.  If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.  If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw his plea.

. . . . .

This amended provision states explicitly the same interpretation arrived at by this court in *Sarubbi*, and adopted in the Fourth and Ninth Circuits.  It was not in effect at the time of plea on July 9, 1979, but is in effect now.[3]

Beyond all this, the court feels it should say no more, and that the presentence reports should remain unread and under seal.

**3.**  The proposal to amend Rule 11(e)(2) in this regard was approved for transmittal to the Supreme Court of the United States at the proceedings of September 21, 22, 1978, see Report of the Judicial Conference of the United States, 1978, at p. 84.

On April 30, 1979, the Supreme Court amended Rule 11(e)(2) as so approved and directed the Chief Justice to transmit it (along with other changes) to the Congress as provided by 18 U.S.C. § 3771 and 3772, and he did.  See House Document No. 96–112, 96th Congress, 1st Session, at p. 15 and 18.  See, also

Supreme Court Reporter, Advance Sheets of June 1, 1979 (Vol. 99, No. 15) at p. 13 and 16.

On July 31, 1979, President Carter signed into law P.L. 96–42 which, while delaying the effective date of some changes and modifying others, allowed the amendment of Rule 11(e)(2) to become effective on August 1, 1979 as transmitted.  See U.S.Code Congressional & Administrative News, Issue No. 7, Sept, 1979; U.S. Code Service (Lawyers Edition), Advance Sheet of Sept, 1979, 96th Congress, 1st Session, and West's Federal Case News, Vol. 2, No. 34, (issue of August 24, 1979), at pp. I and II.