**UNITED STATES of America,**

v.

**Robinson QUINONES, Defendant.**

**Crim. No. 78–144.**

United States District Court,
D. New Jersey.

Nov. 7, 1980.

William Robertson, U. S. Atty. by Ralph Jacobs, Asst. U. S. Atty., Newark, N. J., for the United States.

Stephen J. Edelstein, West Caldwell, N. J., for defendant.

## OPINION

BIUNNO, District Judge.

Quinones was convicted, after jury trial, on charges of armed bank robbery, 18 U.S.C. § 2113(a) and (d), and as a principal for aiding and abetting, 18 U.S.C. § 2. The robbery occurred March 16, 1977 at the Hudson United Bank, in Union City, N.J., and involved more than $26,000.

A general sentence of 24 years was imposed August 3, 1979, to be consecutive to the 25 year sentence imposed in the U.S. District Court for the Eastern District of New York, Crim. 77–54 (involving an armed bank robbery of the Barclay Bank of New York, on January 3, 1977 for nearly $12,-000), and concurrent with a 21 year sentence for first degree robbery, attempted assault (first degree) and criminal possession of a dangerous weapon, imposed in Kings County (N.Y.) Supreme Court on August 29, 1978. This robbery had occurred June 30, 1975.

Quinones was 18 at the time of the New York robbery in 1975, he was a few weeks short of age 20 at the time of the Barclay Bank robbery in Brooklyn, and a few months over age 20 at the time of the Hudson United Bank robbery in Union City, N.J.

Following appeal from his conviction here, a judgment order in lieu of mandate on affirmance was issued March 7, 1980 and filed in this court March 11, 1980. The Supreme Court of the United States denied petition for certiorari on June 2, 1980.

Under the terms of F.R.Crim.P. 35, there are three periods of 120 days each within which a trial court may reduce sentence.[1]

---

1. Other forms of relief available under F.R. Crim.P. 35 are:

a. Correction of an illegal sentence; this action may be taken at any time.

b. Correction of a sentence imposed in an illegal manner; this action may be taken only within the same 120 day time periods allowed for reduction of sentence. And, see, *U. S. v. Buechler*, 557 F.2d 1002 (CA 3, 1977).

c. Reduction of a sentence upon revocation of probation; this may be done at the time of revocation, see 18 U.S.C. § 3653, last paragraph.

d. A sentence of incarceration may be changed to a grant of probation, even though defendant has begun to serve his jail sentence. This is a change in the law laid down by *U. S. v. Murray*, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928) and *Affronti v. U. S.*, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955), and see Notes of Advisory Committee on Rules for the 1979 amendment. This kind of change is limited to the same three periods of 120 days each as govern sentence reductions generally.

Another authorization for sentence reduction is found in 18 U.S.C. § 4205(c), which was § 4208(b) before the revision of the parole laws by Pub.L. 94–233, March 15, 1976. Under that statute a trial court desiring more detailed information as a basis for determining the sentence to be imposed may commit the defendant to the custody of the Attorney General for a study of the kind described in § 4205(d), and that commitment is deemed to be for the maximum sentence of imprisonment prescribed by law. The study is to be furnished to the court within three months, but may be extended for another three months for further study. After receiving the reports and recommendations, the court may place the offender on probation under 18 U.S.C. § 3651, or it may affirm the maximum sentence originally imposed, or it may reduce the sentence and commit the offender under any applicable provision of law. Credit toward any final sentence must run from the date of the original commitment for study. The time period under this section is up to six months from commitment.

The last of these begins to run on the date of denial of a petition for certiorari on direct review. In this case, the last day of the final 120 day period was September 30, 1980, and on that date a notice of motion for reduction of the 24 year sentence, with affidavit, was filed with the Clerk here.[2]

The motion was noticed for a regular argument day, and upon being made aware of it, the court entered an order noting that under F.R.Crim.P. 47, motions in criminal cases are to be in writing and may be supported by affidavit (other than motions during a trial on hearing) unless the court permits them to be made orally. The parties were directed to make written submissions without oral argument. On the civil side, see F.R.Civ.P. 7(b)(1) and 78.

On October 9, 1980, Quinones' attorney submitted his affidavit providing as exhibits an institutional report of the Bureau of Prisons dated September 25, 1980, a statement of the Chaplain at Oxford Correctional Institution, a certificate of the Universal Life Church, Inc. dated November 14, 1979 that Quinones was ordained that day, and a copy of Mr. Quinones' card credentials that he had been ordained.

The submitting affidavit argues that "the frequency of any negative interaction" between Mr. Quinones and prison staff had been reduced to virtually none, with only three negative incidents since December, 1977 and none during the past 8 months (i.

e., since January 25, 1980). It is claimed that his relationship since then has been "excellent", and he is described as having "a very positive attitude". In light of this, it is urged that the adjustment being made indicates clearly that Mr. Quinones is subject to successful rehabilitation warranting reduction of the sentence previously imposed.

A later letter, sent to the court in chambers rather than filed, verifies that Mr. Quinones had been discharged from probation on the Kings County (N.Y.) matter on July 16, 1979, and that this had been already reported to the court before sentence.

The United States filed a statement in lieu of brief in which the position taken was that the sentence imposed was appropriate, and should not be reduced.

The obvious question at the start is whether good institutional behavior after sentence is a factor the sentencing court may properly consider on a Rule 35 motion to reduce sentence.

As a general observation, it is noted that sentencing judges arrive at sentence decisions on the basis of a presentence investigation report prepared in connection with a plea of guilty or nolo contendere or after trial and conviction, see F.R.Crim.P. 32(c). Once an authorized sentence of imprisonment is imposed, the general view seems to be that institutional behavior is a legitimate

---

2. The language of F.R.Crim.P. 35, as written, sets the 120 day periods as the deadlines by which the court may act to reduce a sentence. The rule is silent on deadlines for filing a motion to reduce, in cases where defendant initiates the question. A sentencing judge may enter an order on his own initiative within the time limits without any motion having been filed.

The subject was addressed in the Fifth Circuit. See *U. S. v. Mendoza*, 565 F.2d 1285 (CA 5, 1978). In that case, a motion was filed well before the 120 days ran out. The trial judge was then occupied in a long criminal trial and was not able to consider the motion until the 120 days had run. He then dismissed the motion on the ground that as Rule 35 is written, his authority to reduce sentence expired with the 120 day period. The panel ruling reversed on the ground that the trial judge could act beyond the 120 day period within a reasonable

time and as expeditiously as possible, so long as the motion had been filed within the 120 day period. The panel also went on to establish a rule for the Fifth Circuit, in the exercise of its supervisory power, requiring the motion to be filed within 60 days, so that the trial judge could (in most instances) rule before the 120 days ran out, but retain jurisdiction for a reasonable time beyond that, 565 F.2d at 1292.

On rehearing en banc, the Court of Appeals rejected only so much of the panel ruling as sought to set a time limit less than 120 days for the filing. The rest of the panel ruling was left unchanged, 581 F.2d 89 (CA 5, 1978) (en banc).

The Third Circuit has not expressed a view on either aspect, [see, however, *U. S. v. Dansker*, 581 F.2d 69 (CA 3, 1978)] and the practice is to accept motions filed within 120 days, and to decide expeditiously, even though the ruling is made after the 120 days have run.

source of information for the Parole Commission to consider, but is not a proper source of information for a trial judge to consider on a Rule 35 motion. While the subject has been discussed occasionally, the court finds no decision squarely ruling on the point in this context.

There was a line of cases in the Third Circuit in which institutional behavior was collaterally considered. That line ran from *U. S. v. Salerno, Appeal of Silverman*, 538 F.2d 1005 (CA 3, 1976), *reh. den.* 542 F.2d 628 (CA 3, 1976), to *Addonizio v. U. S.*, 573 F.2d 147 (CA 3, 1978). This history is reviewed in detail in *U. S. v. Whelan and Flaherty*, 456 F.Supp. 744 (D.N.J.1978).

In any event, that line involved cases, not under Rule 35, but under 28 U.S.C. § 2255, in which the prisoner contended that the sentencing expectations of the trial judge had been "frustrated" by the action of the Parole Commission denying parole after the convict had served as much or more of the total sentence as the trial judge had expected. Institutional behavior was a collateral factor in this line of cases since a prisoner with a history of institutional misconduct could not rationally expect to support the theory of these § 2255 cases. Those cases, of course, were roundabout attempts to challenge Parole Commission decisions which are open to judicial review under 28 U.S.C. § 2241, and are proceedings to be brought in that District where the prison is located and where the records are, in contrast to the design for § 2255 motions which are to be brought in the District where sentence was imposed (and before the trial judge if he is still available) because that is where the trial records are. See the discussion in *Whelan v. U. S.*, 427 F.Supp. 379, at 381 (D.N.J., 1977).

The line of § 2255 cases, however, was ended by the decision of the Supreme Court in *U. S. v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). The court there rejected the notion of § 2255 jurisdiction on the theory mentioned, and emphasized the Congressional design to allocate the release function as between trial courts and the Parole Commission, except for the limited authority for reduction of sentence under Rule 35, see footnote 1, supra.

Superimposed on these considerations is the legislative provision, in 18 U.S.C. § 3577 (1970), directing that no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence. See Pub.L. 91–452, Title X, § 1001(a), Oct. 15, 1970, 84 Stat. 951. See, also, Fed.Ev. Rule 1101(d)(3) and Advisory Committee Note and reference to *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1529, 93 L.Ed. 1337 (1949).

> The legislative history for § 3577 merely states: "Section 3577 provides that no limitation shall be placed on the information which a court may receive and consider for the purpose of imposing an appropriate sentence. See *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1529 (1949)." U.S.Code and Congressional News, 91st Congress, Second Session (1970), at p. 4040.

The panel decision in the Fifth Circuit, in *U. S. v. Mendoza*, 565 F.2d 1285 (CA 5, 1978) as part of its ruling that trial court jurisdiction to reduce sentence under F.R.Crim.P. 35 extended long enough after the applicable 120 day period to enable it to have a reasonable time for expeditious consideration and ruling (given a timely filing), was careful to point out that such an extension was not to be taken as an occasion for evaluating institutional behavior after imprisonment, lest the court invade the function of the Parole Commission. See 565 F.2d at 1291.

In the *Silverman* to *Addonizio* line of cases in this circuit, mentioned above, the Court of Appeals also observed that the theory of "frustration of sentencing expectation" was not to constitute the trial court as a super parole board. See, e. g., *U. S. v. Salerno* (Silverman) 542 F.2d 628 (CA 3, 1976) (on rehearing).

The historical background indicates that there were instances, after the 1925 Probation Act was passed, when trial judges re-

leased prisoners by an order of probation, no doubt based on the nature of institutional behavior, conduct, and the like after imprisonment. There may be any number of unreported instances where this was in fact done. However, on those few occasions when the Supreme Court has had occasion to address the question, it has made it clear that the question of release based on institutional behavior and conduct is the business of the Parole Commission and not of the trial courts. See the discussion of the subject in *U. S. v. Murray*, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928) and in *Affronti v. U. S.*, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955). See, also, the discussion in *U. S. v. Golphin*, 362 F.Supp. 698 (D.Pa., 1973). Note, too, the comment in *U. S. v. Addonizio*, 442 U.S. 178, at 187–190, 99 S.Ct. 2235, at 2241–2243, 60 L.Ed.2d 805 (1979).

Originally, the time limit for sentence reduction was 60 days from imposition. The 1966 amendment enlarged this period to 120 days, viewing the 60 day period as too short a time, especially where the prisoner has been sent to a distant prison and encounters delays involved in institutional mail procedures, and the time required to contact relatives, friends and counsel to obtain material in support of the application.

The 1966 amendments also clarified ambiguities in respect to when the 120 day period begins to run. As now phrased, the rule clearly allows up to three separate periods measured by different initiation dates. See footnote 1, supra.

Neither the lengthening of the time nor the clarification of the date when the time begins to run carried any intention, as this court sees it, of providing a trial judge with an opportunity for asking for and evaluating institutional behavior after sentence was imposed as an element to be considered on a Rule 35 motion.

Even when sentence is, in effect, reduced by postponing a final evaluation until after reviewing a study report ordered under 18 U.S.C. § 4205(c), the object is not to obtain observations of institutional behavior. Rather, the object is to obtain more information about the individual from much more thorough and sophisticated studies than the Probation Office is equipped to undertake. The presentence investigation reports are of excellent quality and highly informative, but there are occasional cases where the criminal conduct is so dissonant with the individual's background, training and education, family relations and general character as to call for a much deeper inquiry so that the trial judge will be better equipped to design an appropriate sentence for both the offense and the offender. The object of the study technique is to reduce uncertainty and increase confidence.

One facet of the commitment for a study that is worth noting is that the defendant is provided with two separate opportunities for deciding whether or not to appeal the conviction: once when the "deemed" maximum sentence is imposed for purposes of the study, and again when the study reports have come in, and the court either affirms the maximum sentence, or places the offender on probation, or reduces the maximum sentence and commits under any applicable provision of law. See, *Corey v. U. S.*, 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963) [referring to former 18 U.S.C. § 4208(b)]. Whether a commitment for a study under 18 U.S.C. § 4205(d) as a result, generates two separate sets of Rule 35 time periods, for a total of six rather than three, seems not to have been dealt with anywhere, and is not addressed here.

It is also worth observing that while there is no premium or penalty placed on the decision of an accused to exercise the guaranteed right of trial by jury instead of negotiating a plea agreement under Rule 11(e), or for that matter tendering a plea of guilty or nolo contendere without any agreement as to plea or sentence, there are realistic and practical differences in fact, and these are wholly unavoidable. A defendant who stands trial may be successful in persuading the fact finder of a reasonable doubt on some essential element, and so achieve a verdict of "not guilty" (which is not at all the same as an affirmative finding that he is "innocent").

On the other hand, if a defendant rejects an offer of agreement based on a plea of guilty or nolo contendere to one or more charges (sometimes via superseding indictment or information on a lesser offense) in exchange for applying for dismissal of, or not bringing, other charges, then if there be a verdict of guilt he faces a number of consequential effects.

The first is that his sentence *exposure* will likely be greater. And see *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1977) holding that it is not improper during negotiations for the prosecution to point out that it intends to advance as many charges as it can if there be no agreement.

The second is that if there be no "sentence agreement", the mildest of which under Rule 11(e)(1)(B) is that the prosecution will not oppose whatever request for a particular sentence the defendant may make, with the understanding that the request is not binding on the court, then at sentence the prosecution is free to address the subject, and here 18 U.S.C. § 3577 may be quite significant. See, in this regard, *U. S. v. Sarubbi*, 416 F.Supp. 633 (D.N.J.,1976), and *U. S. v. Fischetti*, 475 F.Supp. 1145 (D.N. J.,1979).

The third is that when there is a plea of guilty or nolo contendere, the court has no more than the pre-sentence report, the information developed at the sentence hearing, and its own expertise on which to decide what sentence to impose. But, if there be a trial, the court inevitably hears a great deal more about the particular offense, in full detail, and far beyond what could ever be gathered for a presentence report. This cuts both ways. Sometimes this vast detail displays mitigating factors, and sometimes aggravating factors.

Finally, if there be a trial and a guilty verdict, and if the accused takes the stand and testifies, the evidence as a whole may make it clear that he deliberately testified falsely. If the judge be so persuaded, and if there be a rational basis for that persuasion, the sentence imposed may be enhanced. See, *U. S. v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978).

■ This thumbnail review should bring out the fact that a defendant's behavior while incarcerated after sentence imposed is not a suitable factor for a Rule 35 motion to reduce sentence. There is too much risk that acceptance of such material will subconsciously lead a trial judge to invade the function of the Parole Commission. Even if it be admissible, under 18 U.S.C. § 3577, a trial court ought not do more than modify the sentence by designating a minimum term, less than one-third, after which the prisoner shall be eligible for parole, 18 U.S.C. § 4205(b)(1), or specify that the prisoner may be released on parole at such time (i. e., with no minimum) as the Parole Commission may determine, under 18 U.S.C. § 4205(b)(2).

■ Institutional behavior, conduct and experience, under the 1976 revision of the parole laws, may also generate a motion by the Bureau of Prisons, at any time, to apply to the sentencing court to reduce any minimum term (usually one-third of the sentence) to time served; the jurisdiction in such cases is express, and no hearing is required, see 18 U.S.C. § 4205(g) (1976).

■ There may also be cases where some circumstance or event, unrelated to the offense or to institutional behavior, ought to be given recognition. A prisoner may contract an incurable disease, or become disabled, or something of that sort may occur to a member of the prisoner's family such as to warrant action to enable the prisoner to provide aid and assistance. For this general category, in addition to 18 U.S.C. § 4205(g), the Congress has authorized the Attorney General to extend the prison limits; the prisoner may be allowed to go outside the walls for one or another such reason, but is still "in prison" in contemplation of law, see 18 U.S.C. § 4082.

■ This pattern confirms the view that institutional behavior and conduct, as well as external circumstances or events, are matters that Congress has chosen to allocate as a function of one or another officer

in the Executive Branch, and not to the judicial branch. That allocation includes the constitutional one of granting reprieves and pardons (except in cases of impeachment), *U.S.Const.*, Art. II, sec. 2, cl. 1, and ought to be respected.[3]

Finally, if the information about institutional behavior, conduct, or unrelated circumstances or events does not arise until after the last 120 day period has run, there would be no authority to act under Rule 35 at all.

█ Putting the above to the side, and addressing the merits of the Rule 35 motion, the evidence before the court shows that Mr. Quinones has three times been convicted of aggravated crimes of violence at early ages. The testimony at trial, as well as the materials provided by the two federal pre-sentence reports and at the sentence hearing show clearly that Mr. Quinones possesses an enormous ego. So far as he is concerned, he is the greatest. An enormous ego can be individually and socially good or bad. In Mr. Quinones' case it is clearly very bad because it is so strongly misdirected to the disregard of the interests of others. He has not hesitated to gather loaded guns and a hand grenade. He has not hesitated to use guns. He has not hesitated to fire a gun.

In prison, of course, he hopefully has no access to such lethal weapons, and so his behavior in that regard is uninformative. He has used a chambermaid as a hostage to prevent his arrest, by his own account at the sentence hearing. In the period from April 6, 1977 to January 25, 1980, he accumulated nine incident reports while in custody and has incurred warnings, reprimands forfeiture of "good-time" allowances, extra duty (suspended) and disciplinary segregation. Even though there has been no incident since January 25, 1980, the court can hardly regard this record as a promising one at this stage. Whether or not he has "turned the corner" is yet to be seen, and if it be seen it will be for the Parole Commission to see it.

The two consecutive federal sentences add up to an aggregate of 49 years. Under the 1976 revision of the parole law, now in 18 U.S.C. § 4205(a), Mr. Quinones becomes eligible for parole after 10 years, instead of after 15 years. If this court reduced his sentence in this case from 24 years to 5 years, he would still become eligible for parole only after serving 10 years of the aggregate. He has a long time to serve before even the 10 years run. The matter of release on parole is judged by the Parole Commission on the basis of the historical 10 years. Even then, assuming the very best performance and earliest release, the court would want the supervision period that follows release to be as long as possible. The risk of revocation of parole, with the loss of "street time" and with lengthy imprisonment to follow, is probably the only effective deterrent to anti-social behavior that is available in a case like this one.

The Rule 35 motion is accordingly denied.

**3.** For a very recent New Jersey case involving a closely similar issue, see *State v. McDermott*, 175 N.J.Super. 334, 418 A.2d 1287 (App.1980). In that case, defendant had been convicted of a large number of offenses which, under then existing law, carried maximum terms of 7 years. After sentence, the judge suspended execution and placed defendant on probation. Defendant then committed another group of like offenses and probation was revoked.

With the taking effect in 1979 of New Jersey's new code of criminal law, N.J.S.A. Title 2C, application was made to a 3-judge panel to reduce sentence in view of lower maximums under the new code for these offenses. The application was denied in view of defendant's criminal record, the serious character and number of his offenses, his failure to take advantage of a specified drug program, his violation of probation conditions and the likelihood of recidivism.

On appeal, defendant was allowed to submit materials tending to show he had performed well in his institutional setting and that he had achieved rehabilitation from his criminal tendencies. The court ruled that this was not a relevant showing on application for sentence reduction, but was more appropriate for consideration by the N.J. Parole Board.